United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 30, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-31832** |
| KEITH DARRELL PALMER, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| US TRUSTEE, 7, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 23-3205** |
| | § | |
| KEITH DARRELL PALMER, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Mr. Kevin M. Epstein, the United States Trustee for the Southern District of Texas ("*U.S. Trustee/Plaintiff*"), filed the "Complaint Seeking Denial of Discharge"[1] ("*Complaint*") seeking a judgment denying the discharge of Keith Darrell Palmer ("*Debtor/Defendant*") under 11 U.S.C. §§ 727(a)(2) and (4). On July 21, 2025, the Court conducted a trial and for the reasons stated herein, Debtor's discharge is denied pursuant to 11 U.S.C. §§ 727(a)(2) and (4).

### I.    FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This

---

[1] Bankr. ECF No. 1. "Bankr. ECF No." refers to docket entries made in the Debtor's bankruptcy case, No. 23-31832. Entries made in Plaintiff's Case number 23-3205 shall take the format of ECF No. __.

Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency,

this Memorandum Opinion controls.

## A. Background

1. Defendant is the debtor in the underlying bankruptcy case, which is Case No. 23-31832 in the Southern District of Texas Bankruptcy Court.[2]

2. Defendant and his wife Maria T. Palmer ("*Mrs. Palmer*") have been married since March 12, 1986.[3] The Defendant has no dependents.[4]

3. Mrs. Palmer has not been employed since December 1987.[5]

4. DDD Houston Truck Wash and Lube, Inc. ("*DDD HTW*") is an entity incorporated in Texas on July 11, 1994, and its initial directors were the Defendant and Mrs. Palmer.[6]

5. DDD HTW's registered office address was 7821 Lyons Avenue, Houston, Texas 77029.[7]

6. Defendant was a director and 50% owner of D/Kon Construction, Inc. ("*D/Kon*") and its registered agent.[8] Dennis Hauer, Jr., owned the other 50%.[9]

7. On October 27, 2009, Dennis Hauer, Jr., and D/Kon filed voluntary bankruptcy petitions.[10]

8. On January 13, 2010, American Commercial Capital, L.L.C. ("*ACC*") filed an amended complaint in an adversary proceeding ("*ACC Adversary Proceeding*") related to Mr. Hauer, Jr.'s bankruptcy case, in the Southern District of Texas Bankruptcy Court.[11]

9. The amended complaint named the Defendant, Mr. Hauer, Jr., and HTW as defendants.[12]

10. On January 11, 2011, the parties filed an agreed motion to approve a compromise reached in the ACC Adversary Proceeding.[13]

11. On February 25, 2011, the Southern District of Texas Bankruptcy Court approved the

---

[2] ECF No. 51-1, at 2.
[3] ECF No. 51-1, at 3.
[4] ECF No. 51-1, at 5.
[5] ECF No. 51-1, at 5.
[6] ECF No. 51-1, at 2.
[7] ECF No. 51-1, at 2.
[8] ECF No. 51-1, at 2.
[9] ECF No. 51-1, at 2.
[10] ECF No. 51-1, at 2.
[11] ECF No. 47-35.
[12] ECF No. 51-1, at 3.
[13] ECF No. 51-1, at 3.

settlement and compromise and entered an agreed judgment dismissing ACC's claims against the Defendant without prejudice.[14] Under the settlement terms, Defendant owed ACC $125,000 ("*ACC Debt*").[15]

12. In 2011, Defendant transferred his interest in DDD HTW to his son, Darrell Palmer, for no consideration.[16] DDD HTW was then dissolved, and Darrell Palmer incorporated the business under a different name, Houston Truck Wash & Lube, Inc. ("*HTW*").[17]

13. HTW's current business address is the same as D/Kon's business address—7821 Lyons Ave., Houston, TX 77029—and Darrell Palmer is the sole director.[18]

14. In October 2022, Defendant bought a home generator. Defendant had not previously owned a home generator.[19]

15. In October 2022, Defendant liquidated an Edward Jones mutual fund ("*Mutual Fund*") totaling $21,261.04, and the proceeds were transferred to Mrs. Palmer's bank account.[20]

16. On October 19, 2022, Defendant sold cattle for $18,559.58, and on April 19, 2023, Defendant sold cattle for $13,411.73 ("*Cattle Sales*").[21] The total net proceeds from the Cattle Sales were $31,971.31.[22]

17. On May 18, 2023, (the "*Petition Date*") Debtor filed the "Voluntary Petition For Individuals Filing For Bankruptcy" under chapter 7 of the Bankruptcy Code.[23]

18. In the one-year period prior to the Petition Date, the Defendant deposited wages equaling $139,090 into Mrs. Palmer's individually owned bank accounts.[24]

19. On June 2, 2023, the Defendant filed his "Statement of Financial Affairs" ("*SOFA*") and "Schedules A/B, C, D, E/F, G, H, I, and J" (collectively referred to as the "*Schedules*" or individually as "*Schedule*").[25]

20. Defendant signed the Petition, Schedules, and SOFA under penalty of perjury.[26]

---

[14] ECF No. 51-1, at 3.
[15] ECF No. 47-36.
[16] *See* ECF No. 47-41, at 21:19–22:3, 65:1–66:2, 68:23-69:3; *see also* ECF No. 47-8; *see also* ECF No. 47-65.
[17] ECF No. 47-41, at 65:1–66:2.
[18] ECF No. 51-1, at 3.
[19] ECF No. 51-1, at 4; ECF No. 91, at 169:18-171:20.
[20] ECF No. 51-1, at 3.
[21] ECF No. 51-1, at 3.
[22] ECF No. 51-1, at 3.
[23] Bankr. ECF No. 1. Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C.
[24] ECF No. 99, App'x 3; ECF No. 47-24; ECF No. 47-44; ECF No. 47-46; ECF No. 47-47; ECF No. 47-48; *see also* ECF No. 51-1, at 4.
[25] Bankr. ECF No. 13.
[26] ECF No. 51-1, at 4.

21. Defendant declared under penalty of perjury that he read the Schedules and SOFA and that the information provided therein is true and correct.[27]

22. On June 15, 2023, Defendant appeared for a § 341 Meeting of Creditors (the "*June 15th 341 Meeting*").[28]

23. At the June 15th 341 Meeting, Defendant testified under penalty of perjury that, prior to signing the documents, he reviewed the bankruptcy Schedules and SOFA.[29]

24. At the June 15th 341 Meeting, in reference to the Schedules and SOFA, the Presiding Officer asked Defendant: "Are there any changes or omissions that you need to bring to my attention?"[30]

25. At the June 15th 341 Meeting, Defendant responded, "No," and counsel clarified that "there was an amendment filed to the schedules" but they were aware of no other changes.[31]

26. Defendant further testified that Mrs. Palmer did not join the bankruptcy filing because "[s]he's never had anything to do with business."[32]

27. When asked why Defendant filed the bankruptcy case, Defendant stated that "[the debt associated with the business] . . . kind of wor[e] [him] down" and he "thought [he'd] go ahead and get rid of it."[33]

28. On July 6, 2023, Defendant appeared for a continued § 341 Meeting of Creditors at which he provided additional testimony (the "*July 6th 341 Meeting*").[34]

29. On July 6, 2023, the Defendant filed an amended "Statement of Financial Affairs For Individuals Filing For Bankruptcy" (the "*Amended SOFA*").[35]

30. Defendant signed the Amended SOFA under penalty of perjury.[36]

31. Defendant declared under penalty of perjury that he read the Amended SOFA and that the information provided therein is true and correct.[37]

32. At Question 17, Defendant identified two checking accounts, both at First National Bank of

---

[27] ECF No. 51-1, at 4.
[28] ECF No. 51-1, at 5.
[29] ECF No. 51-1, at 5.
[30] ECF No. 51-1, at 5.
[31] ECF No. 51-1, at 6.
[32] ECF No. 51-1, at 6.
[33] ECF No. 51-1, at 6.
[34] ECF No. 51-1, at 6.
[35] Bankr. ECF No. 20.
[36] ECF No. 51-1, at 4.
[37] ECF No. 51-1, at 4.

Bellville ("*FNB*").[38]

33. As of the Petition Date, Defendant represented that FNB account ending in -1297 ("*FNB 1297*") is a "spouse account . . . debtor has no interest in account," and it contained $3,435.88.[39]

34. The FNB account ending in -6936 ("*FNB 6936*") is identified as a "joint account," and contained $2,392.30.[40]

35. Defendant scheduled the ACC Debt as an unsecured claim in the amount of $81,334.31.[41]

36. Defendant makes monthly payments to ACC to pay off the ACC Debt, and such payments are reflected in Mrs. Palmer's bank statements.[42]

37. On August 28, 2023, the U.S. Trustee commenced an examination of the Defendant under Fed. R. Bankr. P. 2004 (the "*Rule 2004 Exam*").[43]

38. On September 13, 2023, Mr. Kevin M. Epstein, the U.S. Trustee filed a "Complaint Seeking Denial of Discharge."[44]

39. On October 17, 2023, Defendant filed amended "Schedules A/B, C, and G" (collectively referred to as the "*Second Amended Schedules*" and individually as "*Second Amended Schedule*"), and a second amended SOFA (the "*Second Amended SOFA*").[45]

40. Defendant signed the Second Amended SOFA under penalty of perjury.[46]

41. Defendant declared under penalty of perjury that he read the Second Amended SOFA, and that the information provided therein is true and correct.[47]

42. Defendant did not file a Declaration About an Individual Debtor's Schedules with the Second Amended Schedules.[48]

43. In Second Amended Schedule C, the Defendant exempted a pressure washer in the amount of $1,000 and a cattle chute in the amount of $2,000.[49] Defendant bought both items within

---

[38] ECF No. 51-1, at 5.
[39] ECF No. 51-1, at 5.
[40] ECF No. 51-1, at 5.
[41] Bankr. ECF No. 13, at 24.
[42] ECF No. 51-1, at 5.
[43] ECF No. 51-1, at 3.
[44] ECF No. 1.
[45] Bankr. ECF No. 30.
[46] ECF No. 51-1, at 6.
[47] ECF No. 51-1, at 6.
[48] ECF No. 51-1, at 6.
[49] Bankr. ECF No. 30, at 20; ECF No. 51-1, at 6.

a year of the Petition Date.[50]

44. In the Second Amended SOFA, Defendant stated that his gross income for 2021 was $137,046.00, for 2022 his gross income was $129,606.00, and from January 1, 2023, to the Petition Date his gross income was $42,611.73.[51]

45. On December 22, 2023, Plaintiff filed a "First Amended Complaint Seeking Denial Of Discharge." (the "*Amended Complaint*").[52]

46. On January 5, 2024, Defendant filed his "Answer Of Defendant To First Amended Complaint Seeking Denial Of Discharge" ("*Answer*").[53]

47. The chapter 7 trustee filed a "Notice of Proposed Abandonment" on March 27, 2024. No party objected to the Notice of Proposed Abandonment.[54]

48. No creditors filed an objection to discharge of the Debtor.[55]

49. On July 21, 2025, the Court held a one-day trial and now issues its instant Memorandum Opinion.

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[56] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[57] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(J) this proceeding contains core matters, as it primarily involves an objection to

---

[50] ECF No. 91, at 169:18-171:24.
[51] Bankr. ECF No. 30.
[52] ECF No. 32.
[53] ECF No. 36.
[54] Bankr. ECF No. 37.
[55] ECF No. 51-1, at 2.
[56] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[57] 28 U.S.C. § 157(a); *see also In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

discharge.[58] This proceeding is also core under the general "catch-all" language because such a suit can only arise in the context of a bankruptcy case.[59]

This Court may only hear a case in which venue is proper.[60] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor's main bankruptcy case is pending in this Court, and so venue of this proceeding is proper.

## B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[61] The objection to discharge pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Accordingly, this Court concludes that the narrow limitation imposed by *Stern v. Marshall* does not prohibit this Court from entering a final judgment here.[62] Thus, this Court wields the constitutional authority to enter a final judgment.

## III.   ANALYSIS

Plaintiff brings two causes of action in his Amended Complaint, to wit: (1) denial of discharge pursuant to 11 U.S.C. § 727(a)(2); and (2) denial of discharge pursuant to 11 U.S.C. §

---

[58] *See* 11 U.S.C. § 157(b)(2)(J).

[59] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[60] 28 U.S.C. § 1408.

[61] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[62] *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' We decline to extend *Stern's* limited holding herein.") (citing *Stern v. Marshall*, 564 U.S. 462, 503 (2011)).

727(a)(4).[63] Specifically, the U.S. Trustee asserts that within a year of the Petition Date, Defendant defrauded creditors by transferring his earnings from HTW, the Mutual Fund liquidation proceeds, and the Cattle Sale proceeds to his wife's bank account so that creditors could not reach them.[64] The U.S. Trustee also asserts that Defendant defrauded his creditors by lying on his initial Schedules, SOFA, and during the June 15th 341 creditor meeting by failing to accurately disclose his income from HTW, and failing to disclose a cattle chute, pressure washer, and generator he bought within a year of the Petition Date.[65]

The Court will consider each cause of action in turn.

## 1. 11 U.S.C. § 727(a)(2)

In his Amended Complaint, the U.S. Trustee has alleged that Defendant transferred or concealed property with intent to defraud creditors.[66] Section 727(a)(2) provides, in part, that the court shall grant a debtor a discharge unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred or concealed (A), property of the debtor, within one year before the date of filing of the petition, or (B), property of the estate after the date of the petition.[67]

A plaintiff must prove certain criteria under 11 U.S.C. § 727(a)(2) for the Court to deny a debtor discharge. The plaintiff must show that the debtor (a) transferred or concealed property; (b) within one year of the petition date; (c) the property belongs to the estate; and (d) the transfer was done with intent to hinder, delay, or defraud a creditor of the estate.[68] The plaintiff must prove the

---

[63] *See generally* ECF No. 32.
[64] ECF No. 32, at 11-13.
[65] ECF No. 32, at 13-15.
[66] ECF No. 32, at 11-13.
[67] 11 U.S.C. § 727(a)(2).
[68] *Res-TX One, LLC v. Hawk (In re Hawk)*, 534 B.R. 697, 708 (Bankr. S.D. Tex. 2015).

elements by a preponderance of the evidence, at which point the burden shifts to the debtor to explain their actions.[69]

### a) Transfer and concealment of property

Plaintiff has shown Defendant transferred or concealed property by depositing his HTW earnings, Mutual Fund liquidation proceeds, and Cattle Sale proceeds into his wife's bank account. The definition of "transferring" property includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property."[70] Concealing means "hiding assets from creditors for the purpose of exempting a portion of the estate which would be payable to creditors through the bankruptcy proceeding."[71] Transferring can be proven by showing the debtor disposed or parted with property "with attendant circumstances indicating" that the debtor uses the property as their own.[72]

In 2011, Defendant's construction company D/Kon went out of business and Defendant became liable to a creditor, ACC, for $125,000.[73] That same year, Defendant transferred his interest in  his truck wash business HTW to his son Darrell Palmer for no consideration.[74] Since that time, Defendant has worked for HTW as a consultant, and HTW has been transferring Defendant's earnings into an account that is solely in Mrs. Palmer's name,[75] placing the funds out of reach of Defendant's creditors. HTW also pays the monthly loan payment on Defendant's truck directly to the lender, which is $619.10 per month.[76] Furthermore, HTW pays Defendant's monthly

---

[69] *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695–96 (5th Cir. 2009).

[70] *Laughlin v. Nouveau Body & Tan, LLC (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010) (quoting 11 U.S.C. § 101(54)(D)).

[71] *Bartlett Bank & Tr. Co. v. Wolmer (In re Wolmer)*, 57 B.R. 128, 131–32 (Bankr. N.D. Ill. 1986).

[72] *Pher Ptnrs. v. Womble (In re Womble)*, 289 B.R. 836, 845–46 (Bankr. N.D. Tex 2003) (quoting *FDIC v. Sullivan (In re Sullivan)*, 204 B.R. 919, 939 (Bankr.N.D.Tex.1997)).

[73] ECF No. 47-36, at 7–8.

[74] *See* ECF No. 47-41, at 21:19–22:3, 65:1–66:2, 68:23-69:3; *see also* ECF No. 47-8; *see also* ECF No. 47-65.

[75] ECF No. 91, at 28:25–30:10, 37:22–38:20; *see also generally* ECF No. 47-19; ECF No. 47-28; ECF No. 47-67.

[76] ECF No. 65-9, at 34:11-35:17.

EZ tag truck fee directly to Harris County, which is $160 per month.[77] Additionally, HTW makes payments directly to Discover for a credit card solely in Mrs. Palmer's name, which Defendant has access to and uses for household expenses.[78] Defendant "transferred" his earnings when he directed HTW to send them to Mrs. Palmer's account, to the lender for Defendant's truck loan, and to Harris County for his EZ tag. Additionally, the fact that Defendant has access to Mrs. Palmer's Discover card, and access to the truck are attendant circumstances showing he still has control of the property and uses it as his own. Thus, Defendant "transferred" his earnings within the meaning of 11 U.S.C. § 727(a)(2).

Furthermore, on October 14, 2022, within the year preceding the Petition Date, Defendant liquidated a Mutual Fund that was in his and his wife's names, in the amount of $21,261.04.[79] Also within a year of the Petition Date, Defendant made a total of $31,971.31 from the Cattle Sales. Defendant deposited the Mutual Funds and Cattle Sale proceeds into his wife's individual bank account, out of the reach of his creditors.[80] Defendant testified that he used the money for household expenses such as buying a pressure washer and generator, and for a new cattle chute.[81] Defendant "transferred" the Mutual Fund and Cattle Sale proceeds when he deposited them into his wife's bank account.[82] The fact that he used the money for household expenses is an attendant circumstance showing he still has control of the assets and uses them as his own.[83] Accordingly, the Court finds that Defendant "transferred" his HTW earnings, the Mutual Fund liquidation proceeds, and the Cattle Sale proceeds within the meaning of 11 U.S.C. § 727(a)(2).

b) **The property was transferred within a year of the Petition Date**

---

[77] ECF No. 65-9, at 32:12-33:8.
[78] *Id.* at 28:2-30:7, 31:9–37:21.
[79] ECF No. 48-1, at 43–45; ECF No. 47-47, at 31.
[80] ECF No. 47-47, at 31-32; ECF No. 48-1, at 43–45.
[81] ECF No. 47-11, at 1-12; ECF No. 91, at 169:18-171:24.
[82] *See In re Cipolla*, 476 F. App'x 301, 306 (5th Cir. 2012).
[83] *In re Womble*, 289 B.R. at 845–46.

Defendant's assets must have been transferred within a year of the Petition Date for the discharge to be denied pursuant to 11 U.S.C. § 727(a)(2).[84] Defendant transferred to his wife's account $21,261.04 from the Mutual Fund on October 14, 2022, $18,559.58 in Cattle Sale proceeds on October 20, 2022, and $13,411.73 in Cattle Sale proceeds on April 20, 2023.[85] Defendant also transferred earnings from HTW to his wife's bank account throughout 2022 and 2023.[86] The Petition Date was May 18, 2023.[87] Therefore, the Court finds the Mutual Fund proceeds, Cattle Sale proceeds, and HTW earnings were transferred within a year of the Petition Date pursuant to 11 U.S.C. § 727(a)(2).

### c)   The transferred property belongs to the estate

Plaintiff has also shown that the HTW earnings and proceeds from the Mutual Fund and Cattle Sales that Defendant transferred belong to the estate because Defendant had a property interest in them on the Petition Date. Property of the estate is "all legal or equitable interests of the debtor in property as of the commencement of the case," including proceeds from the estate property.[88] Courts must apply state law to determine a debtor's property rights, and then federal bankruptcy law to determine which rights are estate property.[89] Under Texas state law, "property, other than separate property, acquired by either spouse during the marriage" is considered "community property."[90] Each spouse has a "one-half interest in all community [property]," which

---

[84] *In re Hawk*, 534 B.R. at 708.
[85] ECF No. 51-1, at 3.
[86] ECF No. 99, App'x 3; ECF No. 47-24; ECF No. 47-44; ECF No. 47-46; ECF No. 47-47; ECF No. 47-48; *see also* ECF No. 51-1, at 4.
[87] Bankr. ECF No. 1.
[88] *Croft v. Lowry (In re Croft)*, 737 F.3d 372, 377 (5th Cir. 2013) (quoting 11 U.S.C. § 541(a)(1)).
[89] *See id.* at 374.
[90] Tex. Fam. Code § 3.002.

can be either solely managed or jointly managed.[91] "[S]olely managed community property includes personal earnings."[92]

Here, Defendant's HTW earnings from the year prior to the Petition Date were put into Mrs. Palmer's account.[93] This was community property under Texas law because although the money went into Mrs. Palmer's account, Defendant earned it and had access to the account.[94] Additionally, the Mutual Fund in the amount of $21,261.04 was funded from a joint account in both the Defendant and Mrs. Palmer's names.[95] Because the money came from a joint account, it is also community property.[96] Defendant also has a property right in the Cattle Sale proceeds from October 20, 2022 and April 20, 2023, because Defendant owned the cattle at the time of the sale.[97] Therefore, under Texas law, Defendant had a property right in his HTW earnings that he made during the year prior to the Petition Date, which totaled $139,090,[98] the $21,261.04 from the Mutual Fund liquidation, and the Cattle Sale proceeds of $18,559.58 from the October 20, 2022, sale and $13,411.73 from the April 20, 2023 sale.[99] Furthermore, these property rights are property of the estate under federal bankruptcy law because Defendant had these property rights as of the Petition Date.[100] Thus, the Court finds the Defendant's earnings from HTW, the Mutual Fund liquidation proceeds, and the Cattle Sale proceeds are property of Defendant's bankruptcy estate.

### d)  The transfers were done with intent to hinder, delay or defraud creditors

---

[91] *United States v. Elashi*, 789 F.3d 547, 549 (5th Cir. 2015); *In re Ozcelebi*, 639 B.R. 365, 387 (Bankr. S.D. Tex. 2022) (citing Tex. Fam. Code § 3.102(a)).
[92] *In re Ozcelebi*, 639 B.R. at 387 (citing Tex. Fam. Code § 3.102(a)).
[93] ECF No. 99, App'x 3; ECF No. 47-24; ECF No. 47-44; ECF No. 47-46; ECF No. 47-47; ECF No. 47-48; *see also* ECF No. 51-1, at 4.
[94] *See* Tex. Fam Code. § 3.102(a)(1).
[95] ECF No. 91, at 66:25–68:15.
[96] Tex. Fam. Code § 3.003; 11 U.S.C. § 541(a)(1), (6); *Elashi*, 789 F.3d at 549.
[97] 11 U.S.C. § 541(a)(1); ECF No. 47-47, at 32; ECF No. 47-48, at 7.
[98] ECF No. 99, App'x 3; ECF No. 47-24; ECF No. 47-44; ECF No. 47-46; ECF No. 47-47; ECF No. 47-48.
[99] ECF No. 47-47, at 32; ECF No. 47-48, at 7.
[100] 11 U.S.C. § 541(a)(1).

Plaintiff has also shown there was intent to hinder, delay, or defraud creditors, because Defendant transferred his earnings, the Mutual Fund proceeds and Cattle Sale proceeds to his wife's bank account shortly before the Petition Date, and spent the money on exempt property improvements. To show intent to hinder, delay, or defraud creditors, a plaintiff must show the debtor intended to make it more difficult for creditors to collect on their debts.[101] This can be inferred from the debtor's conduct.[102] Additionally, there is "a presumption of actual fraudulent intent . . . when property . . . is transferred to relatives."[103] While an honest mistake does not equal fraudulent intent,[104] courts should look to a debtor's "whole pattern of conduct" when deciding if there was intent to hinder or delay.[105] The following six factors, or "badges of fraud," are considered by the Fifth Circuit as evidence of actual intent:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.[106]

To show actual intent, "[o]ne of these factors may be sufficient on its own, [while] several factors is a strong indication of fraudulent intent."[107] Here, several badges of fraud are evident. In 2011, Defendant gave his son Darrell Palmer control over the truck wash business, for no consideration, right after he became liable to ACC for $125,000.[108] HTW continued to operate at

---

[101] *In re Hawk*, 534 B.R. at 709.
[102] *See In re Dung Ahn Phan (In re Phan)*, 607 B.R. 598, 609 (Bankr. S.D. Tex. 2019); *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989).
[103] *In re Chastant*, 873 F.2d 89 at 91 (quoting *In re Butler*, 38 B.R. 884, 888 (Bankr. D. Kan. 1984)).
[104] *Doelings v. Doll (In re Doll)*, 668 B.R. 853, 879 (Bankr. N.D. 2025).
[105] *First Tex. Sav. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 991–92 (5th Cir. 1983).
[106] *In re Chastant*, 873 F.2d 89 at 91 (quoting *In re Schmit*, 71 B.R. 587, 590 (Bankr. D. Minn. 1987)).
[107] *In re Hawk*, 534 B.R. at 709.
[108] *See* ECF No. 47-41, at 21:19–22:3, 65:1–66:2, 68:23-69:3; *see also* ECF No. 47-8; *see also* ECF No. 47-65.

the same location and offer the same services.[109] Defendant then became a consultant for the business, and his son paid him a substantial amount, between $200 and $220 per hour, which was transferred directly to his wife's bank account.[110] By transferring the business to his son, and having the business transfer his income directly into his wife's bank account, Defendant effectively put his earnings out of the reach of creditors. Thus, the badges of no consideration and a family relationship are present, and the course of conduct shows an actual intent to defraud creditors.[111] Defendant claims that HTW transfers his earnings to Mrs. Palmer's bank account not to defraud creditors, but because Mrs. Palmer has handled their finances since they got married in 1988.[112] Yet, Defendant and Mrs. Palmer had a joint bank account until 2011 when Defendant became liable to ACC for $125,000, at which point Defendant removed his name from the bank account.[113] The Defendant's removal of his name from the bank account shows Defendant intended to hinder creditors by putting the earnings into Mrs. Palmer's account where creditors could not reach them.

Furthermore, the proceeds from the Cattle Sales were transferred to Mrs. Palmer's bank account and spent on exempt property shortly before the bankruptcy,[114] which shows an actual intent to defraud creditors.[115] Defendant contends the Cattle Sales were part of the ordinary course of business, because he sold cattle every year during October and April.[116] While this does appear to be true based on the sales receipts on the record,[117] it is not the sales that show an intent to

---

[109] ECF No. 91, at 245:17–20.
[110] *See* ECF 47-41; ECF No. 65-9, at 31:12-32:3.
[111] *In re Hawk*, 534 B.R. at 710; *In re Wells*, 426 B.R. 579, 591 (Bankr. N.D. Tex. 2006).
[112] ECF No. 91, at 39:5-40:14.
[113] ECF No. 78-12, at 1–6; ECF No. 92, at 27:18–29:8.
[114] ECF No. 47-11, at 1-12; ECF No. 91, at 169:18-171:24.
[115] *In re Enloe*, 542 B.R. 414, 428 (Bankr. S.D. Tex. 2015) (finding a debt to be nondischargeable where the debtor transferred assets and spent the money on exempt property); *In re Cipolla*, 476 F. App'x 301, 306 (5th Cir. 2012).
[116] ECF No. 91, at 203:8-206:9.
[117] *See generally* ECF 78-10.

defraud creditors, it is the transfer to Mrs. Palmer's bank account and the spending of the proceeds on exempt property that show an intent to defraud.[118]

Additionally, the Mutual Fund was liquidated shortly before the bankruptcy filing and the money was transferred to Mrs. Palmer's bank account.[119] Then the money was spent on improvements to Defendant's exempt homestead.[120] Defendant argues the Mutual Fund was liquidated to pay for necessary expenses, such as the cattle chute, which was old and needed to be replaced,[121] and some remodeling to their home that was done to fix damage from a freeze in 2021.[122] But, it is not the transfers *out* of Mrs. Palmer's account that show fraudulent intent, it is the transfers *into* Mrs. Palmer's bank account, because the transfers into her account placed the money out of creditors' reach.[123] Therefore, Defendant had actual intent to hinder, delay, or defraud creditors within the meaning of 11 U.S.C. § 727(a)(2) because he removed his name from a joint bank account and then had his employer transfer his earnings into it, and he also transferred the Cattle Sale and Mutual Fund proceeds into his wife's bank account shortly before the Petition Date and used the money to improve exempt assets.

Thus, the Court finds that Plaintiff has shown by a preponderance of the evidence that Defendant transferred or concealed his HTW earnings, the Mutual Fund proceeds, and Cattle Sale Proceeds within one year of the Petition Date with intent to hinder, delay, or defraud a creditor of

---

[118] *See In re Hawk*, 534 B.R. at 709.

[119] ECF No. 47-47, at 31-32; ECF No. 48-1, at 43–45.

[120] ECF No. 91, at 168:9-171:25; *In re Enloe*, 542 B.R. at 428 (finding a debt to be nondischargeable where the debtor transferred assets and spent the money on exempt property); *In re Cipolla*, 476 F. App'x at 306.

[121] ECF No. 98, ¶ 23.

[122] ECF No. 91, at 55:8-57:3, 171:21-24.

[123] *In re Hawk*, 534 B.R. at 704-05, 712 (finding that a debtor intended to defraud creditors by transferring money into his parents' business bank account; the debtor's subsequent use of the funds on household expenses did not change his fraudulent intent); *Matter of Reed*, 700 F.2d 986, 992 (5th Cir. 1983) (holding that depositing income into an account unknown to the debtor's creditors to pay for exempt property confirmed fraudulent intent).

Debtor's bankruptcy estate. Therefore, the Defendant's discharge will be denied pursuant to 11 U.S.C. § 727(a)(2).

### 2.   11 U.S.C. § 727(a)(4)

Although the Court is denying the discharge under 11 U.S.C. § 727(a)(2) as explained above,[124] the U.S. Trustee also brought a claim under 11 U.S.C. § 727(a)(4), which the Court will now consider. Section 727(a)(4)(A) provides in part that a court shall grant a debtor a discharge unless the debtor has knowingly and fraudulently made a false oath or account in connection with a case.[125] The plaintiff must prove that "(a) the debtor made a statement under oath; (b) the statement was false; (c) the debtor knew the statement was false; (d) the debtor made the statement with fraudulent intent; and (e) the statement was materially related to the case."[126] The plaintiff has the burden of proof, but once the plaintiff has presented a *prima facie* case, the burden shifts to the defendant.[127]

### a)   Defendant made statements under oath

Defendant filed Schedules, Amended Schedules, SOFAs and testified at two 341 meetings in this case, all of which are statements made under oath.[128]

### b)   Defendant made false statements

Plaintiff has shown that Defendant made false statements under oath regarding his HTW income and exempt homestead improvements. False statements include false testimony at a creditor meeting or Rule 2004 examination, and the filing of schedules or statements with material omissions and an intent to mislead creditors.[129] Defendant failed to accurately identify his income

---

[124] *See supra*, III.1.
[125] 11 U.S.C. § 727(a)(4)(A).
[126] *Mandel v. White Nile Software, Inc. (In re Mandel)*, No. 20-40026, 2021 WL 3642331, at *6 (5th Cir. Aug. 17, 2021) (quoting *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)).
[127] *Id.*
[128] *See* Bankr. ECF No. 1; *see also* Bankr. ECF No. 13; *see also* Bankr. ECF No. 17; *see also* Bankr. ECF No. 30.
[129] *In re Phan*, 607 B.R. at 610.

from HTW, because on his initial SOFA he stated that his monthly income was $9,533.33, but he failed to disclose credit card payments that HTW made on his behalf.[130] Additionally, Defendant claimed that he paid $1,235 in monthly truck payments when it was actually HTW that paid the truck payments and also monthly EZ tag payments.[131] Defendant also failed to identify the cattle chute, generator, and pressure washer purchases on his initial Schedule I.[132] Furthermore, at the June 15th 341 Meeting, Defendant testified that his initial Schedules and SOFA were correct.[133] It was not until October 17, 2023 that he amended his Schedules to include the cattle chute and pressure washer.[134] Thus, the Court finds that Defendant made false statements regarding his HTW income and the cattle chute and pressure washer under oath on his initial SOFA and Schedule I, and at the June 15th 341 creditor meeting.

### c)  Defendant made false statements knowingly

Plaintiff has also shown that Defendant made false statements knowingly, because Defendant later testified he knew about the property he failed to include at the time he filed the SOFA and initial Schedules.[135] "The term 'knowingly' requires that the debtor acted deliberately and consciously;" careless mistakes alone do not satisfy the requirement.[136]

Here, Defendant failed to accurately identify his income from HTW, failed to identify large purchases such as the cattle chute, generator, and pressure washer, and claimed a third-party's expenses as his own on his initial SOFA.[137] Defendant testified at trial that he did not accurately list his income from HTW, or the credit card, truck, and EZ tag payments made by HTW because

---

[130] ECF No. 13, at 43; ECF No. 91, at 143:6-148:21.
[131] Bankr. ECF No. 13, at 45; ECF No. 47-63, at 2:24–4:4.
[132] Bankr. ECF No. 13.
[133] ECF No. 32-3, at 3:8-25.
[134] Bankr. ECF No. 30.
[135] ECF No. 91-148:15-149:18.
[136] *CNR Holdings, LLC v. Coffey (In re Coffey)*, 647 B.R. 365, 400 (Bankr. E.D. Ark. 2022) (quoting *Dantzler v. Zulpo (In re Zulpo)*, 592 B.R. 231, 253 (Bankr. E.D. Ark. 2018)).
[137] Bankr. ECF No. 13.

he thought they were expenses of his son Darrell Palmer, who runs the truck wash.[138] This shows that Defendant was aware of his income from HTW and the credit card, truck, and EZ tag payments, but yet he did not list them on his initial SOFA.[139] Defendant also testified he was aware of his large purchases made within the year of the Petition Date, such as the cattle chute, generator, and pressure washer[140] but yet he failed to list them on his initial Schedules.[141] Thus, the Court finds that Plaintiff has shown that Defendant made false statements knowingly within the meaning of 11 U.S.C. § 727(a)(4), regarding his HTW income, and purchase of the cattle chute, generator, and pressure washer.

### d) Defendant made false statements with intent to defraud

Plaintiff has also shown that Defendant made false statements with intent to defraud. Fraudulent intent can be proven circumstantially by showing the debtor had a reckless disregard for the truth.[142] Furthermore, a reckless disregard for the truth can be shown by the cumulative effect of false statements.[143] Defendant's initial Schedule had multiple inaccuracies, as his income amount was incorrect, and Defendant did not disclose the full amount HTW was paying to his wife's Discover card or the fact that HTW was paying his truck loan and EZ tag payments.[144] Additionally, Defendant listed a truck payment in the amount of $1,235 in Schedule J as one of his monthly expenses, but HTW was actually making the monthly loan payments.[145] Defendant also did not disclose the cattle chute, generator, or pressure washer on his initial Schedules.[146] Defendant also testified at the June 15th 341 Meeting that his initial SOFA and Schedules were

---

[138] ECF No. 91, at 148:15-149:18.
[139] ECF No. 91, at 231:20-232:6.
[140] ECF No. 91, at 169:18-171:10.
[141] Bankr. ECF No. 13.
[142] *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009).
[143] *In re Mandel*, 2021 WL 3642331, at *6.
[144] ECF No. 65-9, at 30:22–31:11, 32:9–33:8; ECF No. 47-41.
[145] Bankr. ECF No. 13, at 45; ECF No. 65-9, at 30:22–31:11; ECF No. 47-41.
[146] Bankr. ECF No. 13.

correct.[147] Defendant argues that because he overstated his income as $246,698 instead of the correct $129,606 on his SOFA, this shows he was being careless, not trying to hide assets.[148] But even in his first and second amended SOFAs, his income does not match his 2022 tax return.[149] On his first amended SOFA, Defendant again listed his income as $246,698,[150] and on his second Amended SOFA, he listed it as $129,606.[151] But his 2022 tax return shows his income as $152,769.[152] This shows that Defendant is still not reporting income accurately. The cumulative effect of Defendant's failure to accurately disclose his income, the truck payments, and the cattle chute, generator, and pressure washer purchases show a reckless disregard for the truth. Because the Defendant had a reckless disregard for the truth, this Court finds Defendant made false statements with intent to defraud within the meaning of 11 U.S.C. § 727(a)(4).

### e)   Defendant's false statements were materially related to the case

Plaintiff has also shown that Defendant's false statements were materially related to the case because they were related to property of the estate. A material statement is a false oath that relates to the debtor's business dealings, property of the estate, or discovery of assets.[153] The value of omitted assets and whether the omission is detrimental to creditors does not need to be considered.[154] Defendant made false statements on his initial SOFA and at the June 15th 341 Meeting when he failed to accurately disclose the credit card payments, truck payments, and EZ tag payments made by HTW, as well as the cattle chute, generator and pressure washer purchases.[155] These false statements are materially related to the case because the HTW income,

---

[147] ECF No. 32-3, at 3:8-25.
[148] ECF No. 98, ¶ 53.
[149] ECF No. 95-1, at 138:10–142:8.
[150] Bankr. ECF No. 20, at 2.
[151] Bankr. ECF No. 30, at 25.
[152] ECF No. 47-14.
[153] *In re Mandel*, 2021 WL 3642331, at *6.
[154] *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).
[155] *In re Duncan*, 562 F.3d at 695.

cattle chute, generator, and pressure washer are property of the estate.[156] If a debtor fails to include assets in their bankruptcy estate, there is less for creditors to recover.[157] Thus, this Court finds Defendant's false statements are materially related to the case within the meaning of 11 U.S.C. § 727(a)(4).

Thus, Plaintiff has shown, by a preponderance of the evidence, that Defendant's statements regarding his HTW income, the credit card payments, truck payments, and EZ tag payments, as well as Defendant's purchase of the cattle chute, generator, and pressure washer, were made under oath, were false, made with intent to defraud, and were materially related to his bankruptcy case. Therefore, the Court finds that Debtor's discharge is denied pursuant to 11 U.S.C. §727(a)(4).

As explained above,[158] Plaintiff has also shown by a preponderance of the evidence that Defendant transferred property with intent to defraud, within the meaning of 11 U.S.C. § 727(a)(2). Accordingly, the Court finds that Debtor's discharge is denied pursuant to both 11 U.S.C. §§ 727(a)(2) and (4).

## IV.   CONCLUSION

A judgement consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED October 30, 2025**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

---

[156] *See supra*, III.1.c.
[157] *See In re Duncan*, 562 F.3d at 695.
[158] *See supra*, III.1.